UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GAINESVILLE COINS, INC.,

     Plaintiff,

v.                                  CASE NO.: 8:12-cv-2607-T-23TGW

OVERSEE DOMAIN
MANAGEMENT, LLC, and JOHN
DOES 1-15,

     Defendants.

_____/

## **ORDER**

Gainesville Coins, Inc., ("GCI") owns the mark "Gainesville Coins" and uses the website "gainesvillecoins.com" to market "precious metals" to numismatists and others.  The defendant Oversee Domain Management, LLC, registered "gainesvillcoins.com," (the "lone-E website") and the John Doe defendants registered "gainsvillcoins.com" (the "no-E website") and "gainsevillecoins.com" (the "swapped-E website").  Alleging a violation of a provision of the Anticybersquatting Consumer Protection Act (the "ACPA"), 15 U.S.C. § 1125(d)(1), and a violation of a provision of Florida's Deceptive and Unfair Trade Practices Act, Section 501.204, Florida Statutes, GCI moves (Doc. 4) for a temporary restraining order ("TRO").

The granting of a TRO requires (1) a substantial likelihood of success on the merits, (2) an irreparable injury in the absence of an injunction, (3) a threatened injury that exceeds any injury to the defendant caused by the injunction, and (4) the absence of a material adverse consequence to the public. *Four Seasons Hotels & Resorts v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003).

A violation of the ACPA occurs if (1) the plaintiff owns a "distinctive or famous mark entitled to protection," (2) a defendants' domain name is "identical or confusingly similar to" the plaintiff's mark, and (3) the defendants registered a domain name with "the bad faith intent to profit." *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001); 15 U.S.C. § 1125(d)(1)(A).  Statutory considerations of bad faith include:

> (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
>
> (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
>
> (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
>
> (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
>
> (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section.

15 U.S.C. § 1125(d)(1)(B).

The lone-E and the no-E websites contain sponsored hyperlinks to websites of GCI's competitors, such as "Silver Eagle," "Apmex Silver Bullion," "Everbank Precious Metals," and so on.  (The swapped-E website fails to load.)  Bad faith is evident from the defendants' apparent failure to own a trademark or intellectual property right similar to the registered and misspelled domain names (together, the "misspelled websites"), from the defendants' apparent attempt to divert consumers from GCI's website to competitors' websites, from the misspelled websites' apparent failure to produce "a *bona fide* offering of any goods or services," and from the

misspelled websites' domain names' apparent failure to include the legal name or the name commonly used to identify the respective defendant.

A wrong for which the law can provide no remedy, trademark infringement "by its nature causes irreparable harm." *Processed Plastic Co. v. Warner Comms.*, 675 F.2d 852, 858 (7th Cir. 1982); *accord Tally-Ho, Inc. v. Coast Comm. College Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989). Because the misspelled websites apparently lack a "*bona fide*" use, a temporary restraining order – especially one prudently limited in scope – likely causes little injury to the defendants. Finally, a TRO causes no foreseeable public harm. To prevent the transfer of the misspelled websites' domain names, the TRO is issued without notice to the defendants.

Accordingly, the motion (Doc. 4) is **GRANTED IN PART** and **REFERRED IN PART** as explained below. The defendants are **ENJOINED** as follows:

Oversee Domain Management, LLC, ("ODM") and its officers, directors, agents, employees, and representatives, and each person acting in connection with each must not (1) use, cancel, or transfer to any person or entity other than GCI the domain names "gainesvillcoins.com," "gainsvillcoins.com," and "gainsevillecoins.com" or (2) register, use, or traffic a domain name that incorporates or is confusingly similar to the Gainesville Coins mark.

Jurisdiction is retained to enforce, construe, and modify this TRO and to enter a similar TRO against the John Does once each is identified. This TRO becomes

effective upon the posting of a good and sufficient bond in the amount of $10,000 and

expires on **DECEMBER 4, 2012**, in accord with Rule 65(b).

                    *    *    *

      Additionally, GCI may expedite discovery as follows:

      ODM must (1) respond, on or before five days after service, to a request for

admission regarding ODM's ownership of the domain names "gainsvillcoins.com"

and "gainsevillecoins.com"; (2) respond, on or before five days after service, to a set

of interrogatories (a) requesting the names and contact information of each person

that has advertised on one of the three websites listed in this order and (b) requesting

identification of fees that ODM received as a result of the advertisements on the

websites; and (3) respond, on or before five days after service, to a request for

production seeking documents regarding the misspelled websites; the documents

include any agreement with a former, current, or potential advertiser and any

compensation received from an advertiser.

      GCI (1) may, to a person or entity advertising on a misspelled website, issue a

subpoena requesting information regarding the advertisements on the misspelled

website and (2) may, to Moniker Online Services, Inc., issue a subpoena seeking the

name and contact information of the registrants of the misspelled websites' domain

name.

                    *    *    *

      To the extent that the motion (Doc. 4) seeks a preliminary injunction, the

motion is **REFERRED** to Magistrate Judge Thomas G. Wilson for a report and

recommendation.  Subject to a rescheduling by Judge Wilson, a hearing on the motion will occur on **NOVEMBER 28, 2012**, at **2:30 p.m.** in Courtroom 12A.  The clerk is directed to leave the motion (Doc. 4) pending.

ORDERED in Tampa, Florida, on November 20, 2012.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE