### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

| | | |
|---|---|---|
| GAINESVILLE COINS, INC., a Florida corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 8:12-cv-2607-SDM-TGW |
| OVERSEE DOMAIN MANAGEMENT LLC, a Delaware limited liability Company and John Does 1-15, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

### DISPOSITIVE MOTION TO DISMISS COMPLAINT FOR LACK OF

### PERSONAL JURISDICTION AND MEMORANDUM OF LAW

Defendant Oversee Domain Management, LLC ("ODM"), by and through its

undersigned counsel, and in accordance with Rules 1.05 and 3.01 of the Local Rules and

Rule 12 of the Federal Rules of Civil Procedure, respectfully files this Motion to Dismiss

and, as the basis therefore, states that this Court lacks personal jurisdiction over ODM

because ODM does not have sufficient minimum contacts with this forum to satisfy

Constitutional due process.

Counsel for both parties have met and conferred pursuant to the Local Rules.

Plaintiff opposes this Motion.

//

//

1

127979.1

<u>**MEMORANDUM OF LAW**</u>

I.     <u>PRELIMINARY STATEMENT</u>

This Court lacks personal jurisdiction over ODM, and, as a result, this action should be dismissed.

Defendant ODM is a Delaware limited liability operating out of California.  It has no offices, employees, or bank accounts in Florida.  It has no registered agents or business licenses in Florida.  It does not sell products in Florida (or anywhere for that matter) nor does it actively solicit customers in Florida.  In short, it does not have the Constitutionally-mandated "minimum contacts" that are required by traditional notions of fair play and substantial justice.

Admittedly, ODM owns various domain names where it hosts various websites, and these websites can be viewed by residents of Florida.  Nevertheless, mere website publication is insufficient to confer jurisdiction in Florida.  Because websites can be viewed anywhere in the world, such flawed logic would result in web site operators being subject to jurisdiction anywhere in the entire world, including such far-off locations as Amsterdam, Phuket, and Istanbul.

Not surprisingly, that is not the law.  At the beginning of the last decade, courts in the Middle District of Florida utilized the sliding scale test found in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), as an aid for determining whether personal jurisdiction could be asserted on the basis of a website.  *Zippo's* sliding scale provides that personal jurisdiction cannot be exercised over operators of "passive" web sites where no commercial activity occurs.  Here, ODM operates "passive" web

sites. These websites simply contain hyperlinks to other third party web sites. No

business transactions or commercial activity take place on ODM web sites at all, and no

commercial information (e.g., credit card information, banking information, etc.) is

shared between visitors to the web site and ODM. Thus, there would be no jurisdiction

under *Zippo*.

Notably, more recently, courts in the Middle District have started to move away

from the application of *Zippo* and towards an even more rigorous analysis which would

require ODM to have "purposeful" (not just foreseeable) contacts directed to the state of

Florida for personal jurisdiction to exist. Such contacts do not exist here. ODM web

sites are not directed towards any state in particular. Thus, under the more rigorous

analysis that has recently been used here, there certainly cannot be personal jurisdiction

over ODM in Florida.

II.     STATEMENT OF FACTS.

        A.     ODM's Lack of Florida Contacts.

ODM is a Delaware limited liability company that owns a portfolio of domain

names. ODM conducts business from the office of its parent company in Los Angeles,

California. It does not have an office anywhere in Florida (or anywhere else outside of

California). It has no employees or bank accounts in Florida. It does not sell products or

offer services to consumers in Florida. It has never filed a lawsuit in Florida or otherwise

availed itself of the Florida legal system. It has never sought to qualify to do business in

the State of Florida, and it does not have a registered agent for service of process in

Florida nor does it have any business licenses in Florida. ODM does not have any

127979.1

"customers" in Florida.  Declaration of Todd Greene, dated December 20, 2012 ("Greene

Decl."), at ¶¶ 2-3 (attached as Exhibit 1 hereto).

     B.     <u>ODM's Operations</u>.

ODM is a domain name holding company which uses an automated process for

purchasing domain names in bulk.  *Id*. at ¶ 4.

Many Internet users surf the Internet by "direct navigation," which occurs when

an Internet user enters a word or phrase directly in the browser's address bar (with an

appropriate top-level domain such as .com or .net), instead of in the search field of a

search engine.[1]  ODM helps ensure that Internet users find the information, products, and

services they seek and that online advertisers reach their audience.  The automated

processes used by ODM accomplish this by identifying unregistered domain names

reflecting generic words and phrases that users are either searching for in search engines

or entering into address bars directly.  For example, if users were consistently searching

for "zip code info" in search engines, the system used by ODM would attempt to register

"zipcodeinfo.com."  *Id*. at ¶ 5.

ODM has entered into a contract with a third party, based in California, and that

third party creates the web pages which appear at the domain names owned by ODM.

These passive web pages consist of keywords and hyperlinks to products/services that a

visitor to the web site might be interested.  *Id*. at ¶ 6.

---

[1]    For example, someone looking for information on zip codes may elect to type
"zipcodeinfo.com" into the address bar of his or her browser to see if there is
anything at that domain rather than first going to a search engine, such as Google, and
typing "zip code info" into the search field.

Specifically, the "landing page" for the ODM web sites (i.e., the first page the user sees), might contain keywords that are specifically related to the domain name (e.g., Zip Code Lookup, Zip Code Map, etc.).  The landing page might also contain other category links to general services and products that would be of interest to all visitors such as postage stamp and job openings.  *Id*. at ¶ 7; Ex. A (printout of landing page for www.zipcodeinfo.com).[2]

When a visitor clicks on a category hyperlink (e.g. "Zip Code Lookup," "Zip Code Map"), they are taken to a secondary page with hyperlinks to specific third party sites offering that product or service and a small blurb about what the third party is offering.  *Id*. at ¶ 8; Exs. B-C (printout of secondary pages for www.zipcodeinfo.com).

Of utmost importance for purposes of this Motion is the fact that visitors to an ODM web site cannot conduct any business on that site.  So, for example, visitors to www.zipcodeinfo.com could not actually find a zip code, buy postage from ODM or apply for a job through ODM.  Instead, to obtain any information, product or service, the visitor must click on the hyperlinks and be transported to the web site of a <u>third party</u> offering the information, product or service that the visitor seeks.  Put another way, visitors cannot "commercially interact" with any of ODM's web sites in that they cannot

---

[2]    Unlike a traditional website which utilizes a "static" page (i.e., a page that looks the same each time it is visited), the landing pages on the DomainSponsor system are "dynamic" and may look different each time they are visited, even if the visits are within seconds of each other.  Greene Decl. at ¶ 7.

provide any personal information (e.g., name, address), any order information, or any payment information (e.g., credit card number).[3] *Id*. at ¶ 9.

III.   LEGAL ARGUMENT.

    A.   The Standard for Determining This Motion.

Fed. R. Civ. P. 12(b)(2) allows a defendant to seek dismissal of a complaint by way of motion on the basis that the court lacks personal jurisdiction. The plaintiff bears the burden of establishing a prima facie case of personal jurisdiction by "[p]resent[ing] enough evidence to withstand a motion for directed verdict." *Dynetech Corp. v. Leonard Fitness, Inc.*, 523 F. Supp. 2d 1344, 1346 (M.D. Fla. 2007) *citing Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006) (citations and internal quotation omitted). If "the defendant submits affidavits contrary to the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting personal jurisdiction, unless the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Id*. Here, ODM has submitted the Declaration of Todd Greene which contains a factual recitation of the lack of contacts between ODM and the state of Florida, so the burden is on Plaintiff to produce evidence supporting personal jurisdiction.

---

[3]   The websites also contain a search box that allows visitors to input search terms or other keywords in response to which hyperlinks to third party websites will appear. Greene Decl. at ¶ 10. That does not mean the site is "interactive" for purposes of a *Zippo* analysis, however. *Zippo* analyzed "interactivity" in terms of commercial information. Visitors do not input their names, credit card information, or banking information into the search term box.

"The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis by the federal courts." *Cable/Home Comm'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990).  First, the Court "must examine the jurisdictional issue under the state long-arm statute."  *Id.*  Second, the Court "must ascertain whether or not sufficient minimum contacts exist to satisfy the Due Process Clause ... so that maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Id.* (citations and internal quotations omitted). "Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).  Applying the minimum contacts test, a court can obtain either general or specific jurisdiction over a defendant.

For purposes of this motion, ODM will not challenge the application of the Florida long-arm statute but will focus solely on the Due Process inquiry.

B.      There Is No General Jurisdiction Over ODM in Florida.

The exercise of general jurisdiction is appropriate only when the defendant's activities in the forum state are substantial or "continuous and systematic," *Helicopteros Nacionales de Columbia S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).  Put differently, "[a] court may assert general jurisdiction over foreign (sister-state or foreign country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___ U.S. ___, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011).

127979.1

Here, there cannot be any question that, respectfully, this Court cannot exercise general jurisdiction over ODM.  The Verified Complaint in this matter does not provide any specific allegations as to the substantial level of activity conducted by ODM in Florida to support such a finding.  That is not surprising.  As detailed, above, ODM does not have "continuous and systematic" contacts with the State of Florida such that it feels "at home" in Florida.  For that reason, this Court's inquiry should focus on whether specific jurisdiction exists.

C.      There Is No Specific Jurisdiction Over ODM in Florida.

The *Dynetech* Court's recitation of how to conduct an analysis on specific jurisdiction is particularly appropriate here:

> In a case involving specific jurisdiction, a defendant's contacts with the forum state must satisfy three criteria: they must be related to the plaintiff's cause of action or have given rise to it; they must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum; and they must be such that the defendant should reasonably anticipate being haled into court there.
>
> The Supreme Court has emphasized that the foreseeability that is critical to due process analysis is ... that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. The minimum contacts must be 'purposeful' contacts.  The requirement for purposeful minimum contacts helps ensure that non-residents have fair warning that a particular activity may subject them to litigation within the forum.'

*Dynetech Corp. v. Leonard Fitness, Inc.*, 523 F. Supp. 2d 1344, 1346-47 (M.D. Fla. 2007) (internal citations and quotations omitted).

//

1.    <u>There is no jurisdiction under the sliding scale of *Zippo*.</u>

Here, Plaintiff complains of an injury resulting from the registration of a domain name and the operation of a website at that domain name.  Thus, this Court's analysis should focus on whether merely operating a website is sufficient to subject ODM to personal jurisdiction in Florida.

Older cases from the Middle District of Florida have partly relied on the sliding scale approach first articulated in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997).  *See, e.g., Nida Corp. v. Nida*, 118 F. Supp. 2d 1223 (M.D. Fla. 2000); *Full Sail, Inc. v. Spevack*, 2003 WL 25277185 (M.D. Fla.).  Explaining the "minimum contacts" analysis on the Internet in terms of a spectrum, the *Zippo* Court provided as follows:

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

*Zippo*, 952 F. Supp. at 1124.

If one applies *Zippo* to this case, it becomes clear that ODM operates a "passive" web site that simply makes keywords and hyperlinks available to website visitors. Visitors do not conduct business with ODM; all they can do is click on the keywords and view more hyperlinks or click on the hyperlink and be transported to the website of a third party. If the visitor wants to conduct business (e.g., buy postage, apply for a job, etc.), they must do so at the third party web site. As a result, under the *Zippo* test, there can be no personal jurisdiction over ODM in Florida.

Indeed, the decision in *Full Sail*, where defendants' motion to dismiss was granted, is particularly instructive. In *Full Sail*, as here, there was no evidence of any actual business transaction nor any revenue from sales in Florida. *Full Sail*, 2003 WL 25277185. Further, one of the websites at issue—fullsailsucks.com—was arguably *more* interactive than the web site at issue here because fullsailsucks.com allowed for indirect posting of comments (*Id*. at \*5) whereas, in the instant case, ODM web sites do not allow people to post comments. If dismissal was warranted in *Full Sail*, it is warranted here.

*Nida* does not command a different result. In *Nida*, the defendant had clearly engaged in purposeful contacts with Florida beyond the operation of a website. For example, the defendant had derived tens of thousands of dollars from sales of its products in Florida over a period of approximately 5 years and had placed advertisements in an industry-specific periodical distributed in Florida. *Nida*, 118 F. Supp. 2d at 1231-32. ODM does not have any such traditional, purposeful contacts. It does not sell a product to Florida residents (or residents of any state for that matter) nor does it advertise itself in Florida publications.

127979.1

2.      There is no specific jurisdiction under the *Calder* test.

In addition to *Zippo*, both *Full Sail* and *Nida* examined the application of the "effects test" from the Supreme Court opinion in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984).   The *Calder* "effects" test has three prongs: (1) an intentional act; (2) expressly aimed at the forum state; and (3) causing injury, the brunt of which must be felt in the forum state.  *Full Sail*, 2003 WL 25277185 at * 6.

In *Full Sail*, the Court concluded that the *Calder* test failed because the "targeted audience presumably exists throughout the entire United States" and, thus, the intentional act was not expressly aimed at Florida.  *Id*. at *6.  The same analysis necessarily holds true here.  ODM operates a website whose target audience is nationwide.  It is not aimed at Florida (or at any other state for that matter).  *See also Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997) ("Creating a [web] site, like placing a product into the stream of commerce, may be felt nation-wide or even world-wide but, without more, **it is not an act purposefully directed toward the forum state**.") (emphasis added).

3.      There is no personal jurisdiction under the "purposeful contact" analysis more recently used in this district.

More recent cases from the Middle District have expressed concern about the application of *Zippo's* sliding scale.  *See, e.g., Dynetech*, 523 F. Supp. 2d at 1347 ("[I]n its prior rulings this Court noted that *Zippo's* 'appeal has not been universal' and that the focus should properly remain on traditional jurisdictional principles even where the lawsuit involves Internet activity."); *Instabrook Corp. v. Instantpublisher.com,* 469 F. Supp. 2d 1120 (M.D. Fla. 2006) ("Many courts have followed the Zippo approach, but its

appeal has not been universal."); *Verizon Trademark Services, LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1332-33 (2011) ("Recently reviewing a district court's jurisdictional determination, the Eleventh Circuit applied a common-sense test concerning the presence of an interactive website and ultimately determined that the district court erred in exercising specific personal jurisdiction over a foreign defense. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1219-1224 (11th Cir. 2009).  In that case, the Eleventh Circuit commented on the *Zippo* case but did not adopt its sliding-scale framework for evaluating contracts with the forum state through a website."). These cases have instead focused on whether a defendant had "purposeful" or "deliberate" contacts with Florida such that it could reasonably anticipate being hauled into a Florida court.

All of these cases are particularly instructive here.  In *Instabrook*, as here, the defendant, a Tennessee corporation, provided an affidavit that clearly outlined its lack of contacts with Florida.  *Instabrook*, 469 F. 2d at 1121-22.  That affidavit averred such things as the defendant (i) never filed a lawsuit in Florida, (ii) had no bank accounts in Florida, (iii) was not licensed to do business in Florida, (iv) had no employees or representatives in Florida, (v) solicited no business in Florida, (vi) never transmitted products or services to Florida.  *Id*.

Ultimately, the *Instabrook* Court granted the defendant's Motion to Dismiss, even though (i) the website at issue was interactive and (ii) the defendant had made sales to Florida residents.  *Id*. at 1127.  The Court essentially held that defendant's contacts were not purposeful contacts sufficient to make the defendant reasonably aware of the

12

possibility of being hailed into a Florida court.  *Id.*; *Shamsuddin v. Vitamin Research Prods.*, 346 F. Supp. 2d 804, 814 (D. Md. 2004) ("Asserting personal jurisdiction over [the defendant] on the basis of its isolated sales and interactive website would ignore the constitutional requirement of deliberate, rather than merely foreseeable, contacts.").

Here, there is even more reason to dismiss this matter than there was in *Instabrook*.  The Declaration of Todd Greene is similar, if not identical, in many respects to the affidavit filed in that case showing the lack of contacts with Florida.  But, unlike *Instabrook*, the ODM web sites are not "interactive" at all; as explained earlier, they are passive.  And, ODM has not even made an accidental sale into Florida.  It cannot make such a sale because it does not target Florida with products because it has no products to sell.

*Dynetech* also supports ODM's position.  In *Dynetech*, the plaintiff alleged jurisdiction based on a previous version of the defendant's websites where a Florida consumer could go **to purchase a product**.  *Dynetech*, 523 F. Supp. 2d at 1347. The *Dynetech* Court found this unpersuasive: "Even if 'prior versions' of websites were considered here, the possibility that Florida consumers could purchase products through that website would not amount to a purposeful contact under traditional jurisdictional principles."  *Id.*   If a website which allows a Florida consumer to purchase products is insufficient to confer jurisdiction, ODM's passive website, on which a consumer can conduct no business, must also be insufficient.

The *Dynetech* Court further noted as follows:

> Plaintiffs also rely on links that appear on Defendants' websites to merchants "that sell products or services directly from Defendants'

> websites" and "also sell products or services in Florida."  []  However, the
> fact that the website of a company that sells products in Florida can be
> reached via a link on Defendants' website is too narrow a thread on which
> to find a meaningful "contact" for the purposes of due process.

*Id.* Thus, to the extent that Plaintiff relies on the fact that ODM's website provides a

hyperlink to a Florida company, that argument is clearly too tenuous to satisfy due

process requirements.

     *Verizon* likewise supports ODM's position.  In *Verizon*, one of the defendants, a

domain name registration service, registered domain names to 30 Florida residents, yet

the Court found that activity an insufficient basis for personal jurisdiction when

considered in the context of the millions of domain names plaintiff had registered

elsewhere.  *See Verizon*, 810 F. Supp. 2d at 1333.  The *Verizon* Court observed the plain

contrast to *Zippo*:  "In *Zippo*, the court found personal jurisdiction appropriate in light of

**thousands** of contracts in the forum state through the website."  *Id.* (emphasis added).

Here, ODM has not entered into a single contract with a resident of the forum state as a

result of their visit to the domain name <gainesvillcoins.com> -- not even a statistically

insignificant number as in *Verizon*.

     Ultimately, the *Dynetech* Court reached the conclusion that this Court should also

reach:  "While these websites likely are as accessible from Florida as they are from any

other state or anywhere in the world where Internet access is available, such accessibility

does not amount to 'purposeful availment' of conducting activities with Florida."  *Id.* at

1348 *citing Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1281

(Fed. Cir. 2005) (pointing out that the defendant's website was "not directed at customers

in the District of Columbia, but instead is available to all customers throughout the country who have access to the Internet").

IV.     CONCLUSION

ODM operates web sites on which people can click on hyperlinks.  That is all. Providing such a passive web site does not constitute a "purposeful" or "deliberate" contact with the State of Florida such that ODM could have reasonably anticipated being haled into Court in Florida.  For that reason, there is no personal jurisdiction over ODM, and this motion to dismiss should be granted.

Dated:  December 21, 2012

Respectfully Submitted:

  /s/  William A. Delgado
William A. Delgado, Esq.
Willenken Wilson Loh & Delgado LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, California 90017
P:  (213) 955-9240
F:  (213) 955-9250
E-mail: wdelgado@willenken.com
*Attorneys for Defendant*
*Oversee Domain Management, LLC*

– and –

John F. Lauro, Esq.
FBN:  794074
Michael G. Califano, Esq.
FBN:  68400
Lauro Law Firm
101 East Kennedy Boulevard, Suite 3100
Tampa, Florida 33602
P:  (813) 222-8990
F:  (813) 222-8991
E-mail: jlauro@laurolawfirm.com
E-mail: mcalifano@laurolawfirm.com

15

127979.1

*Attorney for Defendant*
*Oversee Domain Management, LLC*

127979.1

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY on this 21st day of December, 2012, I electronically filed

the foregoing document with the Clerk of the Court using CM/ECF system, which will

serve a notice of electronic filing to all counsel of record.

 /s/  William A. Delgado
William A. Delgado, Esq.

17

127979.1